

# Exhibit B

Filing # 169619840 E-Filed 03/24/2023 05:27:11 PM

CACE-23-010060

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

    CASE NO: 2023-CA-010060
    DIVISION:

HOLLY CLAMPET,

          Plaintiff,

    v.

DELTA AIR LINES, INC., a foreign
corporation.

          Defendant.

Date: 3/30/23 Time: 8:55th
MCN #111
is a certified process server in the
Circuit and County Courts in and for the
Second Judicial Circuit

**CLASS ACTION**

## SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

    YOU ARE COMMANDED to serve this Summons and a copy of the complaint or
petition in this action on defendant:

DELTA AIR LINES, INC.
A foreign corporation
Registered Agent:
Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301-2525

1

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 03/24/2023 05:27:09 PM.****

The Defendant is required to serve written defenses to the complaint or petition on Alec H. Schultz, HILGERS GRABEN, PLLC, Plaintiff's attorney, whose address is 1221 Brickell Avenue, Suite 900, Miami, Florida 33131, Telephone: 305-630-8304, within twenty (20) days after service of this summons the defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint of petition.

DATED on _____ MAR 29 2023 _____

By: _____
BREN___ ___ ___MA___
Clerk o___ac___

**BRENDA D. FORMAN**

2

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

    CASE NO: _____
    DIVISION: _____

HOLLY CLAMPET,

        Plaintiff,

    v.

DELTA AIR LINES, INC., a foreign
corporation.

        Defendant.

**CLASS ACTION**

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff Holly Clampet, on behalf of herself and all others similarly situated, sues Defendant Delta Air Lines, Inc. ("Delta"), and alleges as follows:

**INTRODUCTION**

1.    This is a class action lawsuit filed to (1) resolve a dispute as to whether Delta may collect undisclosed fees under its contracts with Plaintiff and class members and (2) redress injuries that Plaintiff and a class of consumers have suffered as a result of Delta's failure to disclose fees it received from its sale of travel assistance products on the Delta website, in breach of Delta's contract of carriage. *See* Exhibit 1.

2.    Delta provides for the sale of travel assistance products sponsored by AGA Service Company, Inc. ("AGA") on its website. Specifically, Delta has an agreement with AGA wherein Delta arranges for travel assistance products to be sold in Delta's website booking path, with the term "booking path" referring to the process in which a consumer purchases a ticket on a travel retailer's website.

1

3.     The travel assistance products are not offered through a hyperlink, whereby a consumer looking to purchase a product is able to navigate directly from the website of Delta to AGA's website to explore the products; rather, the consumer must make an affirmative election as to purchasing a travel assistance product before the consumer is able to complete the desired purchase of a ticket for travel on Delta's website.

4.     The marketing language used in promoting the travel assistance products leaves the consumer with the impression that the entire charge for the travel assistance product goes to cover the product's cost, and that Delta does not collect any fees as a result of selling the products on its website.  Indeed, the Delta booking path states that the products are "recommended/offered/sold by Allianz Global Assistance."

5.     In reality, Delta receives a large, undisclosed fee for each travel assistance product sold through the booking path, and this conduct plainly violates the terms of the governing contract between Delta and Plaintiff (and all class members).

## PARTIES, JURISDICTION, AND VENUE

6.     Plaintiff Holly Clampet is an individual who is domiciled in, and is a citizen of, Florida.

7.     Defendant Delta Air Lines, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia.  Delta routinely conducts business in the State of Florida, enters into contracts with Florida residents, and has a registered agent in Florida.

8.     This Court has jurisdiction over Delta because it entered into a contract with Plaintiff (the contract of carriage) in Florida, and independently on the basis that Delta committed a breach of contract in Florida and caused injury to Plaintiff in Florida.

2

9.       Venue is proper in this Court because Plaintiff is a Florida resident, and Delta is a foreign corporation whose principal place of business is not in Florida.

10.      All conditions precedent to the bringing of this action have occurred, or Delta has waived them.

### FACTUAL ALLEGATIONS

11.      AGA is a leading provider of travel assistance products in the United States and in Florida, offering its products for sale on a host of travel retailer websites, including but not limited to, Defendant Delta Air Lines, American Airlines, JetBlue Airways, Alaska Airlines, Marriott Corporation, and the National Railroad Passenger Corporation ("Amtrak").[1]

12.      For each of these travel retailers, including Delta, AGA enters into an agreement with the retailer to offer its products for sale in the retailers' booking path, the mechanism by which consumers purchase tickets for travel.

13.      On every retailer website booking path, including on Delta's website booking path, the consumer is not permitted to skip the election of a travel assistance product. Specifically, the consumer must click on a radio button to either purchase a product or to expressly decline the purchase of a product.

14.      There is aggressive marketing of the assistance products. In the Delta Air Lines booking path, the "yes" radio button is highlighted in bright green, tells consumers the product is "highly recommended," includes quotes from a third-party publication urging purchase ("Travel insurance can be a valuable safety net in any year, but especially when travel uncertainties are

---

[1] Travel assistance products are wholly distinct from travel insurance products (*see e.g.*, Fla. Stat. § 647.02(10)) ("Travel assistance services are not insurance and are not related to insurance."). This suit concerns only travel assistance products.

3

high."), and tells the consumer how many other consumers have purchased the product in the preceding three days.

15.     In the booking path of American Airlines, marketing includes a bright-green checkmark with the word "Recommended" next to the "yes" radio button; then it informs the consumer how many other consumers purchased a product in the preceding seven days.  As with the Delta Air Lines booking path, the marketing states that the products are "recommended/offered/sold by 3rd party, Allianz Global Assistance, not American Airlines."

16.     In the booking path of JetBlue Airways, it includes the words "Highly Recommended" in bright blue text next to the "yes" radio button; then it informs consumers how many others have purchased a product in the "last 15 minutes." JetBlue also states that the products are "recommended/offered/sold by Allianz Global Assistance."

17.     In the booking path of Marriott Hotels' website, the "yes" option is highlighted in bold font, while the "no" radio button is not, and next to the "yes" radio button, there is a blue highlighted box with the words "highly recommended."  There is also a quote from *Forbes* magazine purporting to attest to the value of purchasing one of AGA's products.  While the quotation deliberately gives the impression that it is an endorsement from *Forbes* itself, in reality the line is from a third-party opinion piece in the magazine.

18.     Nowhere in its travel booking path does Delta give consumers any indication that a significant portion of the money they pay for an assistance product goes to the Defendant as an undisclosed fee.  In fact, Delta represents to the contrary, identifying AGA as the recommender, offeror, and seller of the product, with no indication that Delta itself is any of the foregoing.

19.     Delta intentionally fails to disclose the fee it receives for every product sold on its website because it is aware that consumers would be far less likely to purchase a travel assistance product if they knew the truth, namely that Delta receives hidden fees on a per product basis.

20.     Additionally, when a consumer elects to purchase a travel assistance product, the product's cost is not included in the amount the consumer pays Delta for transportation.  So, for example, while a consumer who purchases a seat upgrade or priority boarding rights sees that charge bundled into the overall amount the consumer pays Delta, this is not the case for a travel assistance product.  Consumers are shown two distinct charges prior to making payment: one for the cost of the transportation (including extras like a seat upgrade) and a separate charge for the cost of the travel assistance product.  Nowhere in this process does Delta disclose the travel assistance product fee it receives.

21.     Based upon this misleading presentation, the consumer once again is given the clear impression that the money spent on a trip assistance product is paid wholly to AGA.  The consumer has no information to deduce that they are paying undisclosed fees to Delta.

22.     Thus, Delta markets AGA products to its customers—encouraging them to buy the products on its website—but fails to disclose the associated fees it receives.  Again, customers pay this fee on a per-product basis.

23.     Plaintiff purchased a flight from Delta's website on December 26, 2022.  The departure date was December 31, 2022.

24.     On December 26, 2022, while purchasing her airline ticket on Delta's website, Plaintiff also purchased an AGA trip assistance product.  Plaintiff received a confirmation email from AGA with a copy of the travel assistance product, but at no point did Delta or AGA disclose to Plaintiff that a portion of her purchase price went to the airline as a hidden fee.

5

25. The Delta website booking path prompted Plaintiff to purchase travel assistance for her trip, and it required that she accept or decline the travel assistance product. Delta never disclosed that it received a fee, paid out of her payment for the product, in exchange for marketing the product to Plaintiff.

26. The governing contract between Plaintiff and Delta requires Delta to disclose on its website any fees it receives for optional products a consumer may purchase. Had Delta disclosed the amount of the fee it receives for each trip assistance product sold, Plaintiff would not have purchased the product.

27. Delta's contract of carriage provides that:

> Any and all matters arising out of or relating to this Contract of Carriage and/or the subject matter hereof shall be governed by and enforced in accordance with the laws of the United States of America and, to the extent not preempted by Federal law, the laws of the State of Georgia without regard to conflict of law principles, regardless of the legal theory upon which such matter is asserted.

*See* Exhibit 1 at 25.

28. Thus, Delta's contract expressly adopts and incorporates all relevant provisions of federal law. 14 C.F.R 399.85 states:

> If a U.S. or foreign air carrier has a website marketed to U.S. consumers where it advertises or sells air transportation, the carrier must prominently disclose on its website information on fees for all optional services that are available to a passenger purchasing air transportation. Such disclosure must be clear, with a conspicuous link from the carrier's homepage directly to a page or a place on a page where all such optional services and related fees are disclosed. For purposes of this section, the term "optional services" is defined as any service the airline provides, for a fee, beyond passenger air transportation. Such fees include, but are not limited to, charges for checked or carry-on baggage, advance seat selection, in-flight beverages, snacks and meals, pillows and blankets and seat upgrades. In general, fees for particular services may be expressed as a range; however, baggage fees must be expressed as specific charges taking into account any factors (e.g., frequent flyer status, early purchase, and so forth) that affect those charges.

6

*See* 14 C.F.R 399.85(d).  The provision additionally states that "The Department considers the failure to give the appropriate notice described in paragraphs (a) through (e) of this section to be an unfair and deceptive practice within the meaning of 49 U.S.C. 41712."  14 C.F.R 399.85(f).

29.    By stating that it is governed by the laws of the United States of America, Delta's contract of carriage incorporates the requirements of 14 C.F.R 399.85.

30.    The fee Delta charged and received from Plaintiff was not disclosed, in violation of 14 C.F.R 399.85.  As C.F.R. 399.85(d) makes clear, Delta must not only disclose the fees it received, it must disclose their amounts as well.  Delta failed to make any such disclosure and breached its contract with Plaintiff and all class members as a result.

## CLASS ACTION ALLEGATIONS

31.    Plaintiff brings this lawsuit as a class action pursuant to Fla. R. Civ. P. 1.220(b)(1)(A), & (2).

32.    **Class Definition.**  The Class consists of and is defined as all United States citizens including Plaintiff who: (a) on or after March 21, 2017, (b) purchased a travel assistance product from a travel assistance provider through Delta's website after purchasing a Delta flight, and (c) paid a fee to Delta as a result of the purchase of the travel assistance product.  The Class period will be from March 21, 2017, to the date of class certification (hereinafter the "Class Period").  Delta's contract of carriage, applicable to all Class Members, has a uniform choice of law clause applying the laws of the United States and, when not in conflict, the laws of Georgia, making a nationwide class appropriate, as identical law governs each Class Member's claims.

33.    Plaintiff reserves the right to amend the Class Definition, and/or add additional sub-class definitions as discovery proceeds and to conform to the evidence.

7

34.   Excluded from the Class are Delta, its agents, representatives, and employees; and any judge to whom this action is assigned and any member of that judge's staff and immediate family.

35.   While the exact number of Class members is unknown at this time, Plaintiff submits that based upon information and belief, there are hundreds of thousands of individuals throughout the United States who are potential Class members in this action.   Individual joinder of Class members is impracticable.

36.   Plaintiff further alleges that the members of the Class will be ascertainable through Delta's electronic records, data, and databases, or alternatively, the records of AGA.

37.   There are common questions of law and/or fact shared by Plaintiff and each member of the Class.  These common questions of law and/or fact include the following:

    a.   Whether Delta breached its contract with Plaintiff and Class members by failing to disclose on its website to Plaintiff and Class members the fees it receives upon their purchase of a travel assistance product;

    b.   Whether Delta's contract of carriage with Plaintiff and Class Members permits Delta to charge and receive an undisclosed fee; and

    c.   Whether Delta's conduct caused injury to Plaintiff and Class Members.

38.   Plaintiff's claims are typical of the claims that would be asserted by other members of the Class in that, in proving her claims under the contract, she will simultaneously prove the claims of all Class members.  The rights afforded under the contract are the same for Plaintiff and Class members.  Each Class Member had the same interaction with Delta on its website, as Delta's failure to disclose fees was uniform during the Class Period.

8

39.     Plaintiff is a Class Member.  She is an adequate representative of the Class because her interests do not conflict with the interests of other Class members, and she will fairly and adequately protect the interests of the Class members.  Additionally, Plaintiff is cognizant of her responsibility as a Class representative and has retained experienced counsel fully capable of, and intent upon, vigorously pursuing the action.  Class counsel have extensive experience in class action litigation.

40.     Plaintiff's cause of action against Delta may be maintained as a class action pursuant to Rule 1.220(b)(1)(A), because the prosecution of separate claims by individual Class members would create a risk of inconsistent or varying adjudications concerning individual members of the Class which would establish incompatible standards of conduct for Delta.

41.     Plaintiff's causes of action against Delta may also be maintained as a class action pursuant to Rule 1.220(b)(2), because Delta has acted and refused to act on grounds generally applicable to all members of the Class, thereby making final declaratory relief concerning the Class as a whole appropriate.

**COUNT I**

**BREACH OF CONTRACT**

42.     Plaintiff re-alleges paragraphs 1–41 as if fully set forth herein and further alleges the following.

43.     This is a count for breach of contract.  Plaintiff brings Count I individually and for the Class defined above.

44.     Delta's contract of carriage provides that "[a]ny and all matters arising out of or relating to this Contract of Carriage and/or the subject matter hereof shall be governed by and enforced in accordance with the laws of the United States of America and, to the extent not

9

preempted by Federal law, the laws of the State of Georgia without regard to conflict of law principles, regardless of the legal theory upon which such matter is asserted." *See* Exhibit 1 at 25.

45.   The contract of carriage therefore incorporates federal law, including those laws codified in the Code of Federal Regulations.

46.   14 C.F.R 399.85(d) provides that "[i]f a U.S. or foreign air carrier has a website marketed to U.S. consumers where it advertises or sells air transportation, the carrier must prominently disclose on its website information on fees for all optional services that are available to a passenger purchasing air transportation."

47.   Delta's failure to disclose the fee it received from Plaintiff's purchase constitutes a violation of 14 C.F.R 399.85(d), which is incorporated into the contract, and thereby represents a breach of the applicable contract.

48.   As a result of this breach, Plaintiff and Class members suffered damages in the form of payment of an undisclosed and contractually prohibited fee.

49.   Plaintiff and Class members are each a party to a contract with Delta who have the right to complain about the breach of contract.

## **PRAYER FOR RELIEF**

Named Plaintiff and the class request the following relief:

   a.   Certification of the Class;

   b.   A judgment against Delta;

   c.   Actual damages suffered by Plaintiff and the Class as a result of Delta's breach of contract;

   d.   The costs of suit, including reasonable attorney's fees and pre-judgment and post-judgment interest as provided by law;

e.  Such other relief as the Court deems just and proper;

f.  Plaintiff demands a jury on all claims so triable.

Date: March 22, 2023                          Respectfully submitted,

                                              *s/ Alec H. Schultz*
                                              Alec H. Schultz
                                              HILGERS GRABEN PLLC
                                              1221 Brickell Avenue, Suite 900
                                              Miami, Florida 33131
                                              Telephone:  305.630.8304
                                              Email:  aschultz@hilgersgraben.com

                                              *Counsel for Plaintiff and the Proposed*
                                              *Class*

11

# EXHIBIT 1

**DELTA DOMESTIC GENERAL RULES TARIFF**
**[Last Modified April 13, 2021]**

RULE 1:     General Provisions ...................................................................... 2
RULE 2:     SCHEDULES AND OPERATIONS ........................................... 2
RULE 3:     DEFINITIONS ........................................................................... 3
RULE 4:     PERSONAL DATA...................................................................... 5
RULE 5:     INTER-AIRPORT TRANSPORTATION ................................... 5
RULE 6:     CARRIAGE OF PERSONS WITH DISABILITIES .................. 5
RULE 7:     REFUSAL TO TRANSPORT...................................................... 8
RULE 8:     ACCEPTANCE OF CHILDREN.................................................. 9
RULE 9:     SPECIALLY TRAINED SERVICE DOGS................................. 11
RULE 10:    SMOKE FREE SERVICE ......................................................... 11
RULE 11:    PASSENGER MEDICAL OXYGEN ......................................... 11
RULE 12:    TICKETS.................................................................................... 11
RULE 13:    CONFIRMATION OF RESERVATIONS.................................... 12
RULE 14:    CANCELLATION OF RESERVATIONS..................................... 12
RULE 15:    VOLUNTARY STANDBY TRAVEL............................................ 13
RULE 16:    FARES........................................................................................ 14
RULE 17:    BAGGAGE................................................................................. 15
RULE 18:    ELECTRONIC SURVEILLANCE ............................................. 17
RULE 19:    FLIGHT DELAYS/CANCELLATIONS ..................................... 17
RULE 20:    DENIED BOARDING COMPENSATION................................... 18
RULE 21:    REROUTING .............................................................................. 21
RULE 22:    REFUNDS................................................................................... 23
RULE 23:    CURRENCY; DECLINED OR DISPUTED FORMS OF PAYMENT.......................... 24
RULE 24:    GOVERNING LAW; ENTIRE AGREEMENT; LIMITATION OF LIABILITY................. 25

**RULE 1:**     <u>**General Provisions**</u>

**A.     Contract of Carriage**

When you buy a ticket from or travel on Delta, you enter into a contract with us, and you agree to be bound by its terms.  The terms of your contract are set forth in:

- your Ticket;
- these Conditions of Carriage; and
- our published fare rules and regulations, which may govern the calculation of the fare and other charges that apply to your itinerary.

This document is Delta's Domestic Conditions of Carriage. It applies only to travel entirely within the United States of America and states the terms upon which Delta offers to transport passengers.

Any reference to "Delta" in this contract refers to Delta Air Lines, the Delta Shuttle, and the Delta Connection carriers.  Some flights marketed by Delta may be operated by the other carriers. If any Carrier other than Delta is operating a flight, we will identify that Carrier in our schedules and in written or oral communications with you during the booking process. The terms of transportation applicable to Delta specified in these Conditions of Carriage apply to flights operated by the Delta Connection and Delta Shuttle carriers, and to codeshare flights marketed by Delta.

Delta may act as an agent to issue tickets, check baggage and book reservations for transportation via other Carriers which have interline agreements with Delta. For interline flights operated by other Carriers, the conditions of carriage of the operating Carrier will apply.  Other Carriers may have different terms and conditions applicable to their flights, and these may be obtained directly from the other Carriers.

**B.     Amendments to Conditions of Carriage**

Delta may amend these Conditions of Carriage at any time, except as provided by law.  Your travel is governed by the rules that were in effect on the date you purchased your ticket; provided, however, that Delta reserves the right to apply rules currently in effect on the date of your travel where reasonably necessary for operational reasons and where the change in rule does not have a material negative impact upon you. No Delta employee or ticketing agent has the authority to modify any provision of the Conditions of Carriage unless authorized in writing by a Delta corporate officer.

**RULE 2:**     <u>**SCHEDULES AND OPERATIONS**</u>

Delta will exercise reasonable efforts to transport you and your baggage from your origin to your destination with reasonable dispatch, but published schedules, flight times, aircraft types, seat assignments, and similar details reflected in the ticket or Delta's published schedules are not guaranteed and form no part of this contract.  Delta may substitute alternate Carriers or aircraft, change its schedules, delay or cancel flights, change seat assignments, and alter or omit stopping places shown on the ticket as required by its operations in Delta's sole discretion. Delta's sole liability in the event of such changes is set forth in Rule 22.  Delta is not responsible or liable for making connections, failing to operate any flight according to schedule, changing the schedule or any flight, changing seat assignments or aircraft types, or revising the routings by which Delta carries the passenger from the ticketed origin to destination.

**RULE 3:     DEFINITIONS**

<u>Animals</u>, in addition to the usual connotation, include reptiles, birds, and fish.

<u>Applicable Full Fare</u> means the one-way fares, whether specifically published or derived by construction, for the class of service designated in the Carrier's official general schedule for the aircraft, or cabin of the aircraft used by the passenger.

<u>Carrier</u> means any air carrier shown as a participant in this tariff.

<u>Co-Terminal</u> - Two or more relatively adjacent airports which for the purpose of these fares will be considered the same point.

<u>Days</u> - Full calendar days, including weekend days and legal holidays (but not including the date that any notice is sent).

<u>Dependent</u> – The spouse and children of U.S. Military Personnel or U.S. embassy personnel stationed overseas who are dependent upon such personnel for financial support.

<u>Dot Hazardous Materials Regulations</u> means the hazardous materials regulations issued by the Materials Transportation Bureau of the Department of Transportation in Title 49 of the Code of Federal Regulations, Parts 171 through 177 (49 CFR 171-177).

<u>Fare Component</u> - The fare paid for the portion of the itinerary between the origin and destination/Stopover point.

<u>Government Transport Request (GTR)</u> - Form used for ticket payment and travel authorization for passengers traveling on official business for the federal government by the U.S.

<u>Group</u> means the minimum number of passengers specified in conjunction with the fare as provided for in the applicable fare rules.  Less than the minimum number of passengers may not travel at group fares, even upon payment of the minimum number of fares, unless specifically permitted in a given fare rule.

<u>Immediate Family</u> means spouse, domestic partner, children, step-children, grandchildren, parents, step-parents, grandparents, brothers, step-brothers, sisters, step-sisters, daughters-in-law, sons-in-law, fathers-in-law, mothers-in-law, aunts, uncles, nieces, nephews, brother-in-law and sisters-in-law.

<u>Interlining</u> means utilizing the services of more than one Carrier in connection with a particular fare.

<u>Military Agencies</u> means departments of the Army, Navy and Air Force; the Marine Corps; the Coast Guard; the respective academies of the Army, Navy, Air Force and Coast Guard; and the National Guard.  The Reserve Officer Training Corps is not included.

<u>Military Passenger</u> means military personnel of the U.S. Military Agencies who are on active duty status or who have been discharged from active military service within seven Days of the date of travel.

<u>Person with a Disability</u> means any person who has a physical or mental impairment that, on a permanent or temporary basis, substantially limits one or more major life activities, has a record of

such an impairment, or is regarded as having such an impairment. This term shall be further defined as required by applicable law, including 14 C.F.R. 382.3.

Personal Attendant means the travel companion of a Person with a Disability that is attending to the personal needs of the passenger with a disability.

Qualifying Alternative Transportation means comparable air transportation, or other transportation used by the passenger, at no extra cost to the passenger, that at the time such arrangements are made is scheduled to arrive at the passenger's next Stopover, or, if none, final destination within two hours after the planned arrival time of the passenger's original flight or flights.

Reroute means to issue a new ticket, or honor an existing ticket, covering transportation to the original destination, but via a different routing than that designated on the ticket.

Round Trip means any trip, the ultimate destination of which is the point of origin, and which is legal routing and comprised of an outbound and return segment. Reservations for all segments of a trip for tickets issued at round-trip fares must be confirmed in the same (a single) passenger name record (PNR)

Routing means the Carrier(s) and/or the cities and/or class of service and/or type of aircraft (jet or propeller) via which transportation is provided between two points.

Safety Assistant means a person required by Delta to travel with a Person with a Disability, pursuant to Rule 6(C): to attend to the Person with a Disability's in-flight medical needs; to assist the Person with a Disability's communication with crewmembers; or to assist the Person with a Disability's evacuation from the aircraft in the event of an emergency.

Self-reliant means that a person does not require services related to a disability beyond that normally provided by the Carrier or beyond that which applicable law requires the Carrier to provide.

Standby Passenger - Passenger who will be enplaned on a flight subject to the availability of space at departure time and only after all passengers having reservations for such flight, have been enplaned on such flight. Not all flights will be available for standby. All specific standby rules are governed by Rule 15.

Stopover means a deliberate interruption of a journey by the passenger, agreed to in advance by the Carrier, at a point between the place of departure and the place of destination. Unless otherwise noted, a stopover will occur when a passenger arrives at a point and fails to depart from such point on:
    a) The first flight on which space is available, or
    b) The flight that will provide for the passenger's earliest arrival at an intermediate or junction point(s) or destination point, via the Carrier and class of service as shown on the passenger's ticket, provided however, that in no event will a stopover occur when the passenger departs from the intermediate/junction point on a flight shown in the Carrier's official general schedule as departing within four hours after arrival at such point.

United States of America- The area comprising the 50 states; the District of Columbia; Puerto Rico; the U.S. Virgin Islands; American Samoa; Kanton; Guam; Midway and Wake Islands.

U.S. Armed Forces/U.S. Military Agencies - Department of the Army, Navy, Air Force, Marine Corps, and Coast Guard of the United States of America, the respective academies of the Army, Navy, Air Force, and Coast Guard, and does not include the National Guard Bureau or the Reserve Officer Training Corps, or members of the reserves not holding a valid duty armed forces of the United States green identification card.

U.S. Military Personnel - Unless otherwise indicated, refers only to active duty military personnel, and means Military personnel of the United States Military Agencies holding a valid active duty U.S. Armed Forces green identification card, on active duty status and traveling on authorized furlough, leave, or pass, but expressly excluding Military Personnel on temporary duty orders traveling to or from their temporary duty station.

**RULE 4:** **PERSONAL DATA**

The passenger recognizes that personal data has been given to Carrier for the purposes of making a reservation for carriage, obtaining ancillary services, facilitating immigration and entry requirements, and making available such data to government agencies. For these purposes, the passenger authorizes Carrier to retain such data and to transmit it to its own offices, other Carriers, or the providers of such services, in whatever country they may be located.  All passenger information shall be handled in accordance with Delta's Privacy Policy (https://www.delta.com/content/www/en_US/privacy-and-security.html).

**RULE 5:** **INTER-AIRPORT TRANSPORTATION**

When a metropolitan area is served by more than one airport and the passenger requires connecting service with arrival at one airport and departure from another airport, transportation between those airports must be arranged by and at the expense of the passenger.  Baggage must be claimed and rechecked by the passenger.

**RULE 6: CARRIAGE OF PERSONS WITH DISABILITIES**

A)  Acceptance for Carriage

Delta will make every effort to accommodate a Person with a Disability and will not refuse to transport a person solely based on the person's disability, except as permitted or required by law.

B)  Acceptance of Declaration of Self-Reliance

Unless Delta determines a Safety Assistant is essential for safety, pursuant to Rule 6(C), Delta will accept the determination made by or on behalf of a Person with a Disability as to self-reliance.  Once advised that the person is "self-reliant", Delta shall not refuse such passenger transportation on the basis that the Person with a Disability is not accompanied by a Personal Attendant or based on the assumption that the passenger may require extraordinary assistance from airline employees in meeting the passenger's needs.

C)  Accompanying Safety Assistant Required for Certain Passengers

Delta may require that a Safety Assistant accompany a Person with a Disability as a condition of providing transportation if Delta determines that such an assistant is essential for safety, such as in, but not limited to, the following circumstances:

1)  A passenger is unable to comprehend or respond appropriately to safety related instructions due to a mental disability;
2)  A passenger is unable to physically assist in the passenger's own evacuation from the aircraft due to a severe mobility impairment; or
3)  A passenger is unable to establish a means of communication with Delta personnel sufficient to receive the safety briefing due to having both severe hearing and vision impairments.

D) Medical Clearance

Delta will not require a medical clearance for a Person with a Disability as a condition of travel, except as permitted by law.  Delta may require a medical certificate when, in good faith and using its reasonable discretion, Delta determines there is reasonable doubt that a passenger can complete the flight safely without requiring extraordinary medical assistance.

E) Seating Restrictions and Assignments

When a person identifies the nature of his or her disability, Delta will, to the extent possible, accommodate the passenger with a seat assignment that suits the passenger's needs, including seating the passenger together with any Safety Assistant or Personal Attendant traveling with the passenger. Persons with a disability will not be prohibited from occupying seats in designated emergency exit rows, except to the extent required by law.

F) Acceptance of Aids

In addition to the regular baggage allowance, Delta will accept, without charge, as priority checked baggage, mobility aids, including but not limited to:

   1) an electric wheelchair, a scooter or a manually operated rigid-frame wheelchair;
   2) a manually operated, folding wheelchair;
   3) a walker, a cane, crutches or braces;
   4) any device that assists the person to communicate; and
   5) any prosthesis or medical device.

Where space permits, Delta will, without charge, permit the passenger to store a manually operated, folding wheelchair and other small mobility aids in the passenger cabin during the flight.  The assembling and disassembling of mobility aids will be provided by Delta, without charge.  Wheelchairs and mobility aids will be the last items to be stowed in the aircraft hold and the first items to be removed.

G) Manually Operated Wheelchair Access

To the extent permitted by space and facilities, Delta will permit a passenger using a manually operated wheelchair to remain in the wheelchair:

   1) until the passenger reaches the boarding gate;
   2) while the passenger is moving between the terminal and the aircraft door; and
   3) while the passenger is moving between the terminal and the aircraft.

H) Service Animals

Delta will accept for transportation, without charge, a service Animal required to assist a Person with a Disability. Service Animals are defined as only dogs, regardless of breed, specifically trained to assist a Person with a Disability. To the extent possible, Delta will assign a seat to the person that provides sufficient space for the person and the service Animal.  Delta will permit the service Animal to accompany the person onboard the aircraft and to remain on the floor at the person's seat.  The service Animal will not be permitted to occupy a passenger seat.  To the extent permitted or required by law, Delta reserves the right to deny transportation to any service animal when reasonably necessary, in Delta's sole discretion, for the comfort or safety of passengers or crewmembers or for the prevention of damage to the property of Delta or its passengers or employees.

I)   Services to be Provided to Persons with Disabilities

Upon request, Delta will provide the following services to a Person with a Disability:

1) assistance with registration at the check-in counter;
2) assistance in proceeding to the boarding area;
3) assistance in boarding and deplaning;
4) assistance in stowing and retrieving carry-on baggage and retrieving checked baggage;
5) assistance in moving to and from an aircraft lavatory;
6) assistance in proceeding to the general public area or, in some cases, to a representative of another Carrier;
7) transfer between the person's own mobility aid and a mobility aid provided by Delta;
8) transfer between a mobility aid and the passenger's seat;
9) limited assistance with meals, such as opening packages, identifying items, and cutting large food portions;
10) inquiring periodically during a flight about a passenger's needs; and
11) briefing individual passengers with disabilities and any attendant on emergency procedures and the layout of the cabin.

J)  Advance Notice for Special Services

To the extent permitted by law, Delta may require advance notice for certain special services desired by a Person with a Disability.  Services applicable under this rule include but are not limited to:

1) transportation of an electric wheelchair on an aircraft of less than 60;
2) provision of hazardous materials packaging for batteries or other assistive device that are required to have such packaging;
3) accommodation for a Group of 10 or more passengers with disabilities traveling as a Group;
4) provision of an onboard wheelchair on an aircraft of 60 seats or more;
5) transportation of a Service Animal in the cabin (unless the ticket is purchased less than 48 hours prior to departure);
6) transportation of a Service Animal on a Segment scheduled to take 8 or more hours; or
7) accommodation of a passenger with both severe vision and hearing impairments.

Such requests should be made by the passenger at the time of reservation and as far in advance as possible.  If a passenger requests a special service at least 48 hours prior to departure, Delta will, to the extent possible, provide the service.  If a passenger requests a service less than 48 hours prior to departure, Delta will make a reasonable effort to provide the service.

K)  Boarding and Deplaning

Where a Person with a Disability requests assistance in boarding or seating or in stowing carry-on baggage, Delta will allow the passenger to board the aircraft in advance of other passengers where time permits.

L)  Communication and Confirmation of Information

Delta will use reasonable efforts ensure that announcements to passengers concerning stops, delays, schedule changes, connections, on-board services, and claiming baggage are communicated to any person with a disability in a manner sufficient for the person to understand the communication.

M)  Inquire Periodically

When passengers in wheelchairs that are not independently mobile are waiting to board an aircraft, Delta will inquire periodically about their needs and shall attend to those needs where the services required are usually provided by Delta.

**RULE 7:      REFUSAL TO TRANSPORT**

Delta may refuse to transport any passenger, and may remove any passenger from its aircraft at any time, for any of the following reasons:

A) Government Request or Force Majeure
Whenever necessary to comply with any law, regulation or government directive or request; or when advisable in Delta's sole discretion due to weather or other conditions beyond Delta's control including Acts of God, strikes, civil unrest, embargos, war, and other similar matters of force majeure.

B) Search of Passenger or Property

When a passenger refuses to permit search of his person or property for explosives, weapons, dangerous materials, or other prohibited items.

C) Proof of Identity
When a passenger refuses to produce positive identification on request;

D) Failure to Comply with Delta's Rules or Contract of Carriage

When a passenger fails or refuses to comply with any of Delta's rules or regulations, or any term of the Contract of Carriage.

E) Passenger's Conduct or Condition

Delta will not refuse to provide transportation to a Person with a Disability, as defined in 14 C.F.R. § 382.5 and 382.31, based upon the passenger's disability, except as allowed or required by law.  Delta will not refuse to provide transportation based upon race, color, national origin, religion, sex, or ancestry.  Subject to those qualifications, Delta may refuse to transport any passenger, or may remove any passenger from its aircraft, when refusal to transport or removal of the passenger is reasonably necessary in Delta's sole discretion for the passenger's comfort or safety, for the comfort or safety of other passengers or Delta employees, or for the prevention of damage to the property of Delta or its passengers or employees.  By way of example, and without limitation, Delta may refuse to transport or may remove passengers from its aircraft in any of the following situations:

1) When the passenger's conduct is disorderly, abusive or violent, or the passenger appears to be intoxicated or under the influence of drugs;
2) When the passenger is barefoot;
3) When the passenger interferes with the flight crew's activities, or fails to obey the instruction of any member of the flight crew;
4) When the passenger has a contagious disease that may be transmissible to other passengers during the normal course of the flight;
5) When the passenger is unable to sit in a seat with the seatbelt fastened;
6) When the passenger's behavior may be hazardous or creates a risk of harm to himself/herself, the crew, or other passengers or to the Carrier's aircraft and/or property, or the property of other passengers;
7) When the passenger is seriously ill, unless the passenger provides a physician's written permission to fly; or
8) When the passenger's conduct, attire, hygiene or odor creates an unreasonable risk of offense or annoyance to other passengers.

G) Recourse of Passenger

Delta Domestic General Rules Tariff                                    Page 8 of 25

Passengers shall not engage in any conduct that would authorize Delta to refuse transport under this Rule. The sole recourse of any passenger refused carriage or removed for any reason specified in this Rule shall be recovery of the refund value of the unused portion of his or her ticket as provided in Rule 22.

RULE 8:      **ACCEPTANCE OF CHILDREN**

**A) Accompanied Children**

**(1) General Rule**

Except as set forth in this Rule, children under the age of 15 will not be accepted for transportation unless they are accompanied on the same flight in the same cabin by a parent, legal guardian, or other passenger at least 18 years of age. Delta may require documentation verifying the child's age at check-in. A valid passport, birth certificate or other government-issued identification are all acceptable.

**(2) Accompanied Children Less Than 2 Years Old.**

One child less than 2 years old not occupying a seat may travel with an adult fare-paying passenger at least 18 years old or parent/legal guardian at no additional charge. Additional infants, and infants occupying a seat, must pay the applicable adult fare. A maximum of 2 infants is permitted for each adult. Delta recommends that any child occupying a seat be placed in an approved safety seat. Infants who will reach their second birthday during a journey must occupy a seat and pay the applicable adult fare for the entire journey.

**(3) Accompanied Children 2 Years and Older**

The fare for children ages 2 years and older will be the Applicable Adult Fare.

**B) Unaccompanied Children Under the age of 15.**

Children under the age of 15 may travel unaccompanied on Delta only under the following conditions:

**(1) Children under the age of 5**

No child under the age of 5 will be accepted for unaccompanied travel.

**(2) Children aged 5 through 14**

Children ages 5 through 7 may travel unaccompanied on non-stop flights only and may not connect to other airlines. Children ages 8 through 14 may travel unaccompanied on Delta's non-stop or connecting flights, but may not connect to other airlines with the exception of Delta Connection, KLM and Air France.

**C)      Unaccompanied Minor Service**

**(1) When Unaccompanied Minor Service is Required**

Except as otherwise provided in this Rule, Unaccompanied Minor Service is required for all passengers under the age of 15 that Delta accepts for transportation.

**(2) Unaccompanied Minor Service Defined**

Unaccompanied Minor Service means that Delta will provide supervision for the child from the time of boarding until the child is met at the stop over point or destination. Delta will assume no financial or guardianship responsibilities for unaccompanied children beyond those applicable to an adult passenger. Delta has the right, but is not obligated to require identification of the responsible party meeting the child at a transfer point or final destination. An unaccompanied minor must be confirmed to destination and may not be confirmed on the last connecting flight of the evening (with the exception of markets where there is only one connection and it is the last flight of the day, or for flights to or from Alaska or Hawaii), nor may an unaccompanied minor travel on a flight expected to terminate short of, or bypass, the child's destination. Delta may temporarily suspend unaccompanied minor travel and/or rebook the child on an alternate flight if there is a possibility that weather, irregular operations, or other conditions may cause a flight to be diverted. Delta requires that a parent or responsible adult accompany the child until boarding, and this adult must provide the name, telephone number, and address of the party meeting the child at the transfer point or final destination. Delta reserves the right to refuse to release an unaccompanied child to anyone other than the pre-designated party. Delta representatives cannot administer medicine to children flying alone. An unaccompanied minor may not travel on any domestic flight greater than 2 hours in length which departs between 9 PM and 5 AM ("red-eye flight"). This restriction does not apply for red-eye flights to/from Hawaii and Alaska, however, an unaccompanied minor on a red-eye flight from Hawaii or Alaska may not connect to a domestic red-eye flight or to the last flight of the day unless it is the only flight option for the day.

**D)**     **Unaccompanied Children Ages 15-17**

Although not required, a parent or guardian may request Unaccompanied Minor Service for unaccompanied minors ages 15-17. The applicable unaccompanied minor service charge will apply.

**E)**     **Unaccompanied Minor Service Charge**

In addition to the applicable fare, unaccompanied minors for whom Unaccompanied Minor Service is required or has been requested must pay an unaccompanied minor service charge in the amounts set forth below. Delta reserves the right to refuse to transport any unaccompanied minor for whom Unaccompanied Minor Services are required or requested but for whom the applicable unaccompanied minor service fee has not been paid. If 2 or more unaccompanied minors who are members of the same Immediate Family and ticketed together are traveling together, only one service charge will be assessed.

The unaccompanied minor service charge will be specified at: https://www.delta.com/content/www/en_US/traveling-with-us/special-travel-needs/children.html and is incorporated by reference.

**RULE 9: SPECIALLY TRAINED SERVICE DOGS**

Delta accepts for transportation, without charge, dogs trained: (1) to lead the blind, when the dog accompanies a passenger with impaired vision dependent upon such dog; (2) to assist the deaf, when the dog accompanies a passenger with impaired hearing dependent upon such dog; (3) to assist the physically and psychiatrically impaired passengers dependent upon such dog, or (4) in explosive detection or search and rescue, only when such dogs are accompanied by U.S. military and U.S. government handlers. In the cases of (1) and (2) above, Delta will also accept such dogs when accompanied by the dog's trainer and is en-route to the domicile of the owner for completion of training. In all cases, the service dog will be permitted to accompany such passenger into the cabin but will not be permitted to occupy a seat.

**RULE 10:    SMOKE FREE SERVICE**

Delta prohibits smoking and the use of all smokeless tobacco products (including e-cigarettes) on all flights.

**RULE 11:    PASSENGER MEDICAL OXYGEN**

On flights operated by Delta or Delta Connection, only portable oxygen concentrators (POCs) approved by the FAA are accepted for inflight medical oxygen. A 48-hour notice is required. Please see https://www.delta.com/content/www/en_US/traveling-with-us/special-travel-needs/disabilities.html to obtain information regarding the required medical certificate from a licensed physician and medical screening prior to flight. Medical screening service is provided by Delta at no cost to the passenger. If the passenger makes any voluntary change to his/her itinerary after completion of the medical screening, re-screening may be required. Passengers using POCs on a Delta flight must be seated in a row other than an emergency exit or bulkhead.

**RULE 12:    <u>TICKETS</u>**

A)   You must present a valid ticket for transportation, which entitles you to transportation only between points of origin and destination via the ticketed routing.

B)   Tickets are not transferable. The purchaser of the ticket and the passenger are responsible for ensuring that the ticket accurately states the passenger's name. Presentation of a ticket for transportation by someone other than the passenger named on the ticket renders the ticket void.

C)   Tickets are valid for travel only when used in accordance with all terms and conditions of sale.

D)   Where a ticket is invalidated as the result of the passenger's non-compliance with any term or condition of sale, Delta may:

    A)   Cancel any remaining portion of the passenger's itinerary or bookings,

    B)   Confiscate any unused portion of the ticket,

    C)   Refuse to board the passenger or check the passenger's baggage, and/or

    D)   Assess the passenger for the reasonable remaining value of the ticket, which shall be no less than the difference between the fare actually paid and the lowest fare applicable to the passenger's actual itinerary.

E)   Ticket Expiration

A ticket is valid for one year from the date of issue, and all travel must be completed within the validity period. If exchanged, whether travel has commenced or not, the ticket must be reissued and all travel completed within one year from the original date of issue. However, certain fares may have different periods of validity, in which case the specific rules associated with the fare will apply. If the passenger is prevented from using the ticket, or a portion of the ticket, before the one-year expiration date due to lack of space or flight cancellation, the ticket will remain valid until space can be provided.

F) An electronic ticket (E-Ticket/ET) is the record of agreement maintained and processed within the Carrier's electronic reservation system. A written receipt is provided to the purchaser of the electronic ticket which contains a reference for retrieving the record within the Carrier's reservation system and summary of the ticket information. The Carrier may mandate the issuance of an electronic ticket (ET) regardless of market, Carrier, form of payment, and customer type (including SkyMiles and participating Carrier frequent flyer members).

G) External Reissue Charge

Delta will collect a nonrefundable fee of USD $50.00 for reissue by Delta of tickets originally issued in the United States or Canada by any ticketing source other than Delta,   however, the charge does not apply to same day confirmed transactions, IROP or schedule change situations, SkyMiles upgrade reissues, tickets reissued on delta.com, or tickets issued at military or government fares. This fee applies to all changes to tickets issued at the request of the passenger.

H) Capacity Limitations

Delta will limit the number of passengers carried on any one flight in any fare class or cabin, and such fares and fare classes will not necessarily be available on all flights or in all markets. The number of seats which Delta makes available on a given flight is determined by Delta's best judgment of the anticipated t otal passenger load on each flight.

**RULE 13:**     <u>**CONFIRMATION OF RESERVATIONS**</u>

No reservation on Delta is valid until the availability and allocation of the reserved space is confirmed by Delta or its agent and entered in Delta's electronic reservations system.

Unless an earlier ticketing deadline is imposed by the applicable fare rule or other agreement between Delta and the passenger, Delta must receive payment and the reservation must be ticketed at least 30 minutes prior to the scheduled flight departure time. Failure to comply with this ticketing deadline or an earlier ticketing deadline imposed by the applicable fare rule or other agreement with the passenger will result in cancellation of the reservation without notice. A list of airports imposing an earlier ticketing deadline is set forth at delta.com and incorporated herein by reference.

**RULE 14:**     <u>**CANCELLATION OF RESERVATIONS**</u>

A) <u>Delta Will Cancel</u> reservations of any passenger whenever such action is necessary to comply with any governmental regulation, or to comply with any governmental request for emergency transportation in connection with the national defense, or whenever such action is necessary or advisable by reason of weather or other conditions beyond its control.

B) The Transportation Security Agency's (TSA) Secure Flight Program requires that Delta collect

Delta Domestic General Rules Tariff                                                    Page 12 of 25

the following additional information from passengers when making a reservation to fly within, into or out of the United States and reservations for point-to-point international flights operated by U.S.- based airlines:

> 1) Full Name (required), as it appears on government-issued I.D. approved for use when traveling
> 2) Date of Birth (required)
> 3) Gender (required)
> 4) Redress Number (optional)

Delta may cancel your reservation if the reservation does not include the required Secure Flight Passenger Data (full name, date of birth and gender) at least 72 hours prior to your scheduled departure. This cancellation policy applies to all Delta tickets, including tickets for our codeshare partners' flights.

C)  Failure To Appear
If you fail to appear for any flight in your itinerary without giving Delta notice in advance of the departure of the flight, Delta may cancel your reservation for all remaining flights in your itinerary.

D)  Airport Check-In Time Limits

1)  Reservations Subject to Cancellation for Failure to Meet Check-in and Boarding Deadlines

Your reservation may be cancelled if you do not comply with all applicable check-in procedures by the check-in deadline for your flight, or if you are not at the gate and ready for boarding by the applicable boarding deadline. The check-in and boarding deadlines in effect on the date of travel will apply and are posted on delta.com.

2)  Passenger Responsibility to Allow Sufficient Time

You must arrive at the airport with sufficient time to comply with all check-in procedures, complete security screening, comply with all other government requirements and departure processing, and arrive at the gate by the applicable boarding deadline. Delta will not delay flights for passengers who are not at the gate and ready to board on time, and is not liable for any loss or expense due to the passenger's failure to comply with this provision.

RULE 15:    **VOLUNTARY STANDBY TRAVEL**

Tickets may not be used for voluntary standby travel on any flight other than the ticketed flight unless expressly permitted by the fare rules of the ticket. When voluntary standby travel on another flight is permitted, the following provisions apply:

1) Voluntary standby travel is subject to the availability of seats at departure time in the same cabin as originally ticketed and does not guarantee transportation on the requested flight(s) including the origin, downline, or connecting flights. Request for voluntary standby travel may be made up to 24 hours prior to original ticketed departure time. Notwithstanding anything set forth herein, Same Day Paid Standby travel is not permitted for Basic Economy fares.

2) Voluntary standby travel is limited to passengers with a confirmed ticketed reservation for a later flight on the same day of travel. Delta will not permit changes to the origin, destination, or co-terminals, or to the routing for fares that are flight-specific or require specific routing.

Delta Domestic General Rules Tariff                                          Page 13 of 25

3) Delta reserves the right to charge a nonrefundable same day standby fee when a passenger requests to standby for an alternate flight for which the passenger does not hold a confirmed reservation. The fee, if any, may be assessed based on each Segment from the passenger's origin to destination or next point of stop over. These fees will be charged if the passenger flies any portion of the Segment, therefore, passengers that are removed at intermediate points on through flights and/or voluntarily deplaned at a destination other than the destination for which the fee was intended will not be eligible for a partial or whole refund. Refer to delta.com for current standby fees.

4) Delta is not liable to pay compensation, including but not limited to, denied boarding compensation and amenities, for a failure to provide transportation and/or accommodate the passenger's request for voluntary standby travel.

5) Delta reserves the right to discontinue accepting and placing passengers on the airport standby list.

6) Eligibility for same day standby is at Delta's discretion and may be restricted based on operational considerations or limited to selected flights, specified booking classes, payment by credit card only.   Eligibility may also be restricted by the fare rules governing the passenger's ticket.

7) Delta may choose to accommodate passengers from the airport standby list in any specified order and may take into account ticket value, frequent flyer status, check-in time, and other factors.

8) Delta reserves the right to limit the number of passengers on the airport standby list, only accept the passenger's standby request at an airport location, and limit the minimum and maximum time frames that airport standby listing is allowed.

**RULE 16:**       **FARES**

A)       Fares Applicable Only For Ticketed Itinerary

Fares apply for travel only between the points for which they are published. Tickets may not be issued at fare(s) published to and/or from a more distant point(s) than the points being traveled, even when issuance of such tickets may produce a lower fare.

B)       Erroneous Fares

Delta will exercise reasonable efforts to ensure that all fares it publishes are accurate and available for sale, but Delta, as a policy, does not file nor intend to file tickets priced at a zero fare or that are erroneous or reasonably apparent as erroneous. If an erroneous fare is inadvertently published for sale and a ticket is issued at the erroneous fare before it has been corrected, Delta reserves the right to cancel the ticket purchase and refund all amounts paid by the purchaser or, at the purchaser's option, to reissue the ticket for the correct fare.
In this event, Delta will also reimburse any reasonable, actual, and verifiable out-of-pocket expenses incurred by the purchaser in reliance upon the ticket purchase. The purchaser must provide receipts or other evidence of such actual costs incurred in support of any reimbursement request.

C)       Circumvention of Published Fares

Delta prohibits ticketing practices intended to circumvent the published fare that Delta intends to offer for your true itinerary. These practices include:

1) Back to Back Ticketing - The purchase or usage of two or more tickets issued at round trip fares, or the combination of two or more round trip fares end to end on the same ticket for the purpose of circumventing minimum stay requirements.

2) Throwaway Ticketing - The purchase or usage of round trip fares for one way travel.

3) Hidden City/Point Beyond Ticketing - The purchase or usage of a fare from a point before the passenger's actual origin or to a point beyond the passenger's actual destination.

D) When the fare between any 2 points is not specifically published via the desired routing, the fare will be constructed by combining two or more separate fares, via the desired routing from the passenger's point of origin to point of destination, which produce the lowest fare for the class of service used; provided, however, that combined fare will not exceed the lowest fare determined in accordance with this rule and the applicable fare rules. Delta's direct sales channels will offer customers the lowest applicable published fare for itineraries between points in the United States on Delta, Delta Connection, Delta Shuttle and Delta Codeshare flights for the flights, dates and class of service requested to which our representatives have access. Please note that Delta will quote lowest published fare that we offer for the specific airports and type of itinerary that you request. We do not search for or quote fares for other itineraries, including by combining one-way or other fares. Fares not accessible directly from Delta may include, but are not limited to, unpublished fares, consolidator fares, negotiated fares, tour or package fares, and discounts available only via Internet web sites.

E) Duplicate, Fictitious and impossible/illogical bookings

Delta prohibits duplicate, impossible, or fictitious bookings, including but not limited to multiple conflicting itineraries for the same passenger on the same day or bookings with connections that depart before the arrival of the inbound flight. Delta reserves the right to cancel any such booking which has not been ticketed, and to cancel and refund any such booking which is ticketed at a refundable fare.


## RULE 17: BAGGAGE

### A.   Checked and Carry-On Baggage Policies and Restrictions

Ticketed passengers may check baggage and carry baggage on board Delta aircraft, subject to this rule. Delta's baggage policies and baggage fees are available at www.delta.com/bags and are incorporated by reference as if set forth in this contract of carriage. These policies restrict the quantity, size and weight of baggage, and govern the carriage of hazardous and dangerous goods, and special items (such as sporting equipment, medical equipment and mobility aids, musical instruments, and fragile and perishable items).


### B.   Baggage Liability

#### 1.   General Limitation of Liability for Loss of, Damage to, or Delay in Delivery of Baggage

Delta's liability for loss, damage, or delay in the delivery of a passenger's checked baggage, carry-on baggage, or other personal property tendered to Delta in connection with air transportation on Delta shall be limited to proven damage or loss. Actual value for reimbursement of lost or damaged property shall be determined by the documented original purchase price less any applicable depreciation for prior usage. Under no circumstances shall the liability for loss, damage, or delay in the delivery of baggage exceed

$3,800 per fare-paying passenger. These limitations shall also apply to baggage or personal property if and to the extent accepted by Delta for temporary storage at a city or airport ticket office or elsewhere before or after the passenger's trip.

**2.   Preexisting Damage/ Ordinary Wear and Tear**

Delta is not liable for preexisting damage (including minor cuts, scratches, and broken zippers as a result of over packing) or for wear and tear resulting from ordinary handling of baggage.

**3.   Special Items**

**a)      Wheelchairs and Personal Assistive Devices**

The maximum liability limitations set forth above shall not apply to claims for loss, damage, or delay in the delivery of wheelchairs or other assistive devices.   Delta will accept these items as checked baggage regardless of packaging, but will not be responsible for repair or replacement of such items due to damage existing at the time of acceptance (which will be noted by Delta on a release form at the time of acceptance).

**b)      No Liability for Loss or Damage to Fragile, Perishable, or Precious Items Not Identified to Delta at the Time of Check-In**

Delta is not liable for any loss or damage to precious items, nor for deterioration or spoilage resulting from delay in delivery of any perishable items, nor for damage to or damage caused by, fragile articles that are unsuitably packed, if such items are included in the passenger's checked baggage without Delta's knowledge.  The passenger must identify such items to Delta at the time of check-in.

**c)      Fragile or Perishable Items Accepted Pursuant to Limited Liability Release**

Delta is not liable for loss, damage, or delay in the delivery of a passenger's baggage or other property accepted by Delta pursuant to the execution of a Limited Liability Release form executed by the passenger for the purpose of inducing Delta to carry the item, except as expressly provided by the Limited Liability Release.

**4.   Loss Due To Government or Airport Action**

Delta is not liable for loss, damage, or delay of a passenger's checked baggage, carry-on baggage, wheelchair or assistive device, or any personal item that may result from a security search of such items conducted by an agent of any local, state, or federal agency in charge of airport security screening, or from confiscation by an agent of any local, state, or federal agency.

**5.   Time Limitations for Baggage Claims**

Delta is not liable for any loss, damage, or delay in the delivery of baggage arising out of or in connection with transportation of, or failure to transport any baggage unless notice of a claim is presented to a Delta office within 24 hours after the alleged occurrence of the events causing the claim, and unless the action is commenced within one year after such alleged occurrence.  Any notification received within 24 hours that informs Delta of the nature of the claim will suffice, and Delta may deny any claim not presented within 24 hours of the alleged occurrence. Written notification of loss must be received by Delta's system baggage within 21 Days after the alleged occurrence, and Delta may deny any claim for failure to provide written notice within 21 Days.

**6.   Carriage By Multiple Carriers**

When the transportation includes Delta and one or more Carriers with a limitation of liability exceeding $3,800 for each fare-paying passenger and responsibility for loss, damage, or delay in delivery of baggage cannot be determined, the liability limit of $3,800 for each fare-paying passenger will be applied to all Carriers.  Whenever responsibility for loss, damage, or delay in delivery of baggage cannot be determined and when transportation is via Delta and one or more Carriers which exclude certain items in checked baggage from their liability, Delta will not be liable for the excluded items.

C.    **Governing Rules for Domestic Codeshare Flights**

When the passenger's travel involves domestic flights operated by a Delta domestic codeshare partner other than a Delta Connection carrier, the baggage rules of the marketing carrier on the first Segment of a round trip, or the marketing carrier on the first Segment of each one way trip will govern when determining baggage acceptance policies and applicable baggage fees.  Notwithstanding the foregoing, the baggage liability provisions set forth above shall govern the liability of Delta and/or any Delta Connection carrier with respect to any transportation subject to this contract of carriage.

**RULE 18:**    **ELECTRONIC SURVEILLANCE**

Passengers and their baggage are subject to inspection with an electronic detector with or without the passenger's consent or knowledge.

**RULE 19:**    **FLIGHT DELAYS/CANCELLATIONS**

### A. Delta's Liability in the Event of Schedule Changes, Delays and Flight Cancellations

If there is a flight cancellation, diversion, delay of greater than 120 minutes, or that will cause a passenger to miss connections, Delta will (at passenger's request) cancel the remaining ticket and refund the unused portion of the ticket and unused ancillary fees in the original form of payment in accordance with Rule 22.  If the passenger does not request cancellation and refund of the remaining portion of the ticket, Delta will transport the passenger to the destination on Delta's next flight on which seats are available in the class of service originally purchased. At Delta's sole discretion and if acceptable to the passenger, Delta may arrange for the passenger to travel on another Carrier or via ground transportation. If acceptable to the passenger, Delta may provide transportation in a lower class of service, in which case the passenger may be entitled to a partial refund. If space on the next available flight is available only in a higher class of service than purchased, Delta will transport the passenger on the flight, although Delta reserves the right to upgrade other passengers on the flight according to its upgrade priority policy to make space in the class of service originally purchased.  Delta will not be liable under any circumstances for any special, incidental or consequential damages arising from the foregoing.

### B. Delta's Liability for Additional Amenities in the Event of Schedule Changes, Delays and Flight Cancellations

Except as provided above, Delta shall have no liability if the flight cancellation, diversion or delay was due to force majeure.  As used in this rule, "force majeure" means actual, threatened or reported:

(1)  Weather conditions or acts of God;
(2)  Riots, civil unrest, embargoes, war, hostilities, or unsettled international conditions;
(3)  Strikes, work stoppages, slowdowns, lockout, or any other labor-related dispute;
(4)  Government regulation, demand, directive or requirement;
(5)  Shortages of labor, fuel, or facilities; or
(6)  Any other condition beyond Delta's control or any fact not reasonably foreseen by Delta.

However, when a passenger's travel is interrupted for more than 4 hours after the scheduled departure time as a result of flight cancellation or delay on the date of travel other than from force majeure, Delta will provide the passenger with the following additional amenities during the delay:

**(a)      Hotels**

If overnight accommodations are available at Delta contracted facilities, Delta will provide the passenger with a voucher for one night's lodging when the delay is during the period of 10:00 pm to 6:00 am. Delta will provide free public ground transportation to the hotel if the hotel does not offer such service. If accommodations are not available, Delta will provide the passenger with a voucher that may be applied to future travel on Delta equal in value to the contracted hotel rate, up to $100 USD.

**(b)      Ground Transportation**

In lieu of lodging or other amenities, Delta will furnish ground transportation to the destination airport if a passenger's flight is diverted to an alternative airport and if the destination on the ticket and the diverted airport destination are within the following city groups:

San Francisco, CA (SFO)/ Oakland, CA (OAK)/ San Jose, CA (SJC)
Los Angeles, CA (LAX)/ Long Beach, CA (LGB)/ Ontario, CA (ONT)/ Santa Ana, CA (SNA)
Denver, CO (DEN)/ Colorado Springs (COS)
O'Hare – Chicago, IL (ORD)/ Midway – Chicago, IL (MDW)
Dallas-Ft. Worth, TX (DFW)/ Dallas, TX Love Field (DAL)
Bush Intercontinental – Houston, TX (IAH)/ Hobby – Houston, TX (HOU)
Fort Lauderdale, FL (FLL)/ Miami, FL (MIA)/ West Palm Beach, FL (PBI)
Baltimore, MD (BWI)/ National – Washington, DC (DCA)/ Dulles – Washington, DC (IAD)
Newark, NJ (EWR)/ LaGuardia – New York, NY (LGA)/ John F. Kennedy – New York, NY (JFK)
Orlando, FL (MCO)/ Tampa, FL (TPA)/ Daytona Beach, FL (DAB)/ Melbourne, FL (MLB)/Sarasota Bradenton, FL (SRQ)

**(c)      Additional Amenities**

Delta will provide such additional or alternative amenities as are necessary to maintain the safety and/or welfare of customers with special needs such as unaccompanied children and customers with disabilities.  Such amenities will be furnished consistent with special needs and/or circumstances.

**C.  Extended Tarmac Delays – Codeshare Services**

In the event of extended tarmac delays on flights operated by a Delta codeshare partner, the contingency plan for lengthy tarmac delays of the operating Carrier will apply.


**RULE 20:      DENIED BOARDING COMPENSATION**

A)  Overbooking of Flights
Because passengers with confirmed reservations on a flight sometimes fail to show, Delta reserves the right to sell more tickets for travel on each flight than there are seats available on the aircraft. In some cases, this may result in a flight in which Delta cannot accommodate one or more passengers with confirmed reservations (an "oversold flight"). Delta may deny boarding to passengers with confirmed reservations on an oversold flight as set forth in this rule. The rights of passengers who are denied boarding shall be governed by this rule.

B)  Request For Volunteers

Delta Domestic General Rules Tariff                                              Page 18 of 25

Before denying boarding to any passenger holding a confirmed reservation on an oversold flight, Delta will ask other passengers on the flight to voluntarily give up their seat in exchange for compensation in an amount and form to be determined by Delta in its sole discretion. If a sufficient number of volunteers agree to give up their seats in response to Delta's offer, then no passenger with a confirmed reservation will be involuntarily denied boarding due to the oversale of the flight. If there are more volunteers than required, selection of the volunteer(s) to receive compensation will be determined in Delta's sole discretion.

C) <u>Involuntary Denied Boarding</u>

If an insufficient number of passengers volunteer to give up their seats in response to Delta's offer, Delta may involuntarily deny boarding to one or more passengers on the oversold flight according to the following boarding priority rules:

1) <u>Passengers Holding Tickets for Travel in Premium Cabin, SkyMiles members identified with a Diamond Medallion ("DM"), Platinum Medallion ("PM"), or Gold Medallion ("GM") elite-status designation, and passengers holding tickets purchased under a DL corporate travel agreement.</u>

Passengers holding tickets for confirmed space in the First or Business class cabin, SkyMiles members identified with a DM, PM, or GM elite-status designation, and passengers holding tickets purchased under a DL corporate travel agreement will be accommodated before other passengers holding tickets and/or boarding passes for confirmed space in the Coach cabin.

2) <u>Passengers With Boarding Passes</u>

Subject to the terms set forth in Rule 20(c)(1) and (4), passengers holding boarding passes who check in and present themselves at the departure gate in compliance with Rule 13 will be accommodated before passengers traveling in the same cabin who have not been issued boarding passes or who fail to comply with applicable check-in requirements. Subject to the availability of seats on the aircraft, boarding passes may be obtained by passengers who hold tickets for confirmed reserved space in the following manner:

a) for passengers traveling on electronic tickets, through the Online Check-in feature on Delta.com within 24 hours of scheduled departure

b) for passengers traveling on electronic tickets, through a Delta airport kiosk within four hours of scheduled departure

c) from a Delta airport ticket counter and/or the check-in desk located in the departure area.

3) <u>Passengers Without Boarding Passes</u>

Passengers with confirmed reservations who have not been issued a boarding pass and present themselves at the departure gate in compliance with Rule 13 will be accommodated according to the following priority rules:

a) Passengers who have been rebooked to the present flight as a result of an irregular operation (e.g., delay, cancellation) of a previously booked flight.

b) SkyMiles members identified with a Silver Medallion ("FO") elite-status designation.

c) Passengers with a SkyTeam Elite or Elite Plus status.

    d)   Passengers without any elite-status designation.

Within each of the foregoing groups, passengers are prioritized first by class of service and then by time of check-in.

4)   <u>Special Needs Passengers</u>

Because of the special needs of passengers with disabilities, unaccompanied minors, and aged or infirm passengers, and active members of the U.S. Armed Forces on travel orders, Delta reserves the right to accommodate such passengers without regard to the boarding priorities established by this provision.

D)  <u>Transportation For Passengers Denied Boarding</u>
Delta will provide transportation to passengers who volunteer to relinquish their seats or who are denied boarding involuntarily due to the oversale of a flight as follows:

1)   <u>Next Available Flight</u>

Delta will transport the passenger on its next flight on which space is available to the passenger's next Stopover, or if none, to the passenger's destination, at no additional cost to the passenger.

2)   <u>Transportation on Other Airlines</u>

At Delta's sole discretion, Delta may instead arrange for transportation on any other Carrier or combination of Carriers to the passenger's next Stopover, or if none, to the passenger's destination, at no additional cost to the passenger.

3)   <u>Overnight Stay Required</u>

If the transportation provided to a passenger pursuant to this section requires that the passenger stay overnight before continuing his/her travel, Delta will provide hotel accommodations to the passenger at no additional cost. If hotel accommodations are unavailable, Delta will compensate the passenger with a credit voucher valid for future purchases from Delta in an amount commensurate in value with the local average contracted hotel rate up to $100 USD, to be determined by Delta.

E)  <u>Compensation For Involuntary Denied Boarding</u>
When a passenger with a confirmed reservation is involuntarily denied boarding on an oversold flight pursuant to this rule, Delta's sole liability to the passenger shall be to provide alternative transportation as provided in paragraph D, above, and to pay denied boarding compensation, if applicable, pursuant to the terms and conditions of this rule.

1)   <u>Conditions For Payment of Involuntary Denied Boarding Compensation</u>
The passenger shall not be entitled to any compensation for involuntary denied boarding if:

    a)   <u>Passenger's Failure to Comply with Contract of Carriage</u>
    The passenger has not complied fully with Delta's contract of carriage or tariff provisions regarding ticketing, reconfirmation, check-in, or acceptability for transportation

    b)   <u>Substitution of Equipment</u>

The flight for which the passenger holds confirmed space is unable to accommodate that passenger because of substitution of equipment of lesser capacity when required by operational or safety reasons; or, on an aircraft with a designed passenger capacity of 60 or fewer seats, the flight for which the passenger holds confirmed reserved space is unable to accommodate that passenger due to weight/balance restrictions when required by operational or safety reasons.

c) Carriage in Alternative Cabin
Delta offers to accommodate the passenger in a section of the aircraft other than that specified on his/her ticket at no extra charge; provided however that if a passenger is seated in a section for which a lower fare applies, the passenger will be entitled to a refund of the difference in fare.

d) Alternative Transportation
Delta arranges comparable air transportation, or other transportation used by the passenger, at no extra cost to the passenger, that at the time such arrangements are made is scheduled to arrive at the passenger's next Stopover, or, if none, final destination within one hour after the planned arrival time of the passenger's original flight or flights.

F) Amount of Involuntary Denied Boarding Compensation
If all conditions for compensation are met, then Delta shall pay compensation to passengers involuntarily denied boarding in an amount to be calculated as follows:

1) When Delta arranges Qualifying Alternative Transportation
If Delta arranges Qualifying Alternative Transportation, then Delta will pay denied boarding compensation in an amount equal to 200% of the fare (including any surcharges and air transportation taxes) to the passenger's next Stopover, or if none, to his/her final destination, but no more than $775.00.

2) Where Delta cannot arrange Qualifying Alternative Transportation
If Delta cannot arrange Qualifying Alternative Transportation, then Delta will pay denied boarding compensation in an amount equal to 400% of the fare (including any surcharges and air transportation taxes) to the passenger's next Stopover, or if none, to his/her final destination, but no more than $1550.00.

G) Time of Payment for Involuntary Denied Boarding Compensation
If all conditions for compensation are met, Delta will pay any involuntary denied boarding compensation on the day and at the place where the denial of boarding occurred, in cash or immediately negotiable check; provided, however, that if the alternative transportation arranged for the passenger's convenience departs before the payment can be made to the passenger, then payment will be made by mail or other means within 24 hours after the denied boarding occurs.

**RULE 21:**      **REROUTING**

A        **General Provisions**

1. Fare Applicable To Rerouting Or Change In Destination
   a.  Unless otherwise specified in the fare rule, a passenger may change the routing, destination, Carrier(s), class of service, or dates of travel specified on an unused ticket in accordance with paragraph 2) below, provided that, after transportation has commenced, a one-way ticket will not be converted into any other type of ticket (such as a round-trip, circle-trip or open-jaw trip ticket).

   b. Except as otherwise provided in Rule 19, the fares and charges applicable, when a rerouting or change in ultimate destination is made at passenger's request prior to arrival at the ultimate destination named on the original ticket, shall be the applicable fare and charges for the entire revised itinerary in effect on the date that the rerouting or change in ultimate destination is entered on the passenger's new ticket.

   c. Rule 12(E) applies for validity of voluntarily exchanged/reissued tickets.

2. Fare Applicable To Upgrading Class Of Service While In Flight
When a passenger moves from one class of service to another while in flight, an additional collection will be made in an amount equal to the difference between:

   1. The one-way fare applicable to the class of service used from passenger's point of origin on such flight to the last scheduled stop prior to the passenger's change in class of service, plus the one-way fare in the new class of service from such stop to the passenger's destination on such flight, and

   2. The fare paid for transportation from the passenger's origin to destination on such flight.

   When the amount described in 1) above is less than the amount described in 2) above, no additional collection will be made. The acceptance of such passenger in the class of service to which he/she is moving for travel beyond the next scheduled stopping point in the flight is subject to availability.  Discounts will not apply.

**B. Ticket reissue procedures**

   -Unless otherwise specified in a fare rule, the following procedures will apply to Delta ticket reissues.

    For nonrefundable fares:
    - If the price of the new ticket is lower than the ticket being reissued, the difference in ticket price will be provided to the passenger in the form of a non-refundable Delta travel voucher at the time of reissue.
    - If the price of the new ticket is equal to or higher than the ticket being reissued any difference in fare will be collected at the time of reissue.

    For refundable fares:
    - If the price of the new ticket is lower than the ticket being reissued, any difference
    In fare will be refunded to the original form of payment at the time of reissue.
    - If the price of the new ticket is higher than the ticket being reissued, the
     difference in fare will be collected at the time of reissue.

   -Flights must be rebooked and the ticket reissued at the time of the change.

   1. Unused tickets
    When making changes to an unused ticket, Delta will cancel the itinerary and start over, issuing a new ticket using current fares subject to all applicable fare rules.  The value of the original ticket may be applied toward the purchase of the new ticket.  If the unused fare is refundable, the value of the original ticket may be applied toward the purchase of the new ticket.
   2. Partially Used Tickets
    a. When making changes to partially used tickets, Delta will apply one of the following procedures resulting in the lowest fare:

i.   Reprice the itinerary, attempting to keep fares of the fully flown fare components and replacing the unflown fare components using current fares.  No changes are permitted to the fare break points of the fully flown fare components.  Delta will validate all fare rules at the time of reissue. The new ticket may be a lower or equal or higher price than the previous ticket.

-OR-

ii. Issue a new ticket using current fares and validating all fare rules at the time of reissue.  If the original fare is nonrefundable, the Carrier will apply the remaining value for the unflown Segments of the partially used ticket, if any toward the purchase of a new ticket.  For refundable fares, Delta will apply the remaining value from the partially used ticket, if any, toward the purchase of a new ticket.

### C.  Same Day Confirmed

Unless otherwise specified in the fare rules, a passenger holding a nonrefundable ticket may change to another flight to the same destination operated by Delta or a Delta Connection carrier on the same day, subject to the policies set forth at https://www.delta.com/content/www/en_US/traveling-with-us/ticket-changes-refunds/sameday-travel-changes.html and incorporated herein.

## RULE 22:     REFUNDS

### A.     Involuntary Refunds

If a refund is required because of Delta's failure to operate on schedule or refusal to transport (except as a result of passenger's failure to comply with the contract of carriage), the following refund will be made directly to you:

1)   If no portion of the ticket has been used, the refund will be an amount equal to the fare paid.

2)   If a portion of the ticket has been used and termination (interruption) occurs:

a)   At A Fare Breakpoint - The refund will be an amount equal to the fare paid for the unused transportation from the point of termination (interruption) to the destination or next Stopover point named on the ticket, or to a point at which transportation is to be resumed.  No refund will apply when alternate transportation is provided by Delta and accepted by the passenger.

b)   Within A Fare Component - The refund will be an amount equal to the percentage of unflown mileage to fare component total mileage by prorating the fare paid for the fare component, from the point of termination/interruption to the destination, or next Stopover point named on the ticket, or to the point at which transportation is to be resumed.  No refund will apply when alternate transportation is provided by Delta and accepted by the passenger.

### B.     Voluntary Refunds

#### 1.     Nonrefundable Tickets

Most tickets issued by Delta are nonrefundable.  Delta will not refund any portion of a fare that is nonrefundable, and Delta will not refund any taxes, fees or charges collected upon nonrefundable tickets.  Delta may permit a portion of the fare paid for an unused nonrefundable ticket to be applied toward the

purchase of future travel on Delta, or to upgrade or downgrade those tickets after purchase, as set forth in the applicable fare rule. Delta may charge an administrative service charge for processing any permitted changes to nonrefundable tickets, which will be deducted from any credit toward the purchase of future travel on Delta, or collected at the time the change is processed, as applicable.

In the event of death of the passenger prior to the date of travel, tickets issued at nonrefundable fares will be refunded to the deceased passengers' estate upon request.

### 2. Fully Refundable Tickets

If your ticket was purchased at a fare that is fully refundable, Delta will issue a refund of any unused refundable portion of your ticket at your request. You must surrender any unused portion of the ticket at the time of the refund request. No refund will be issued on any ticket unless Delta receives a request for the refund and any unused coupons are surrendered to Delta within one year of the original issue date of the ticket. The amount of the refund will be calculated as follows:

1. If no portion of the ticket has been used, Delta will refund the total fare and all taxes, fees or charges paid.

2. If a portion of the ticket has been used, Delta will refund an amount equal to (a) the total fare and all taxes, fees or charges paid, minus (b) the fare and taxes, fees or charges for the used portion of the ticket.

### C. Time Limit for Refund Requests

No refund will be issued on any ticket unless Delta receives a request for the refund and any unused coupons are surrendered to Delta within one year of the original issue date of the ticket.

### D. Form of Refund

Delta will issue refunds on eligible tickets as follows:

1. Tickets paid for by credit card will be refunded to the credit card account used to purchase the ticket, typically within seven business days of Delta's initial receipt of refund request.

2. Tickets paid for by cash, if cash is accepted by Delta, will be refunded by check issued to the person named as a passenger on the ticket, typically within 20 business days of Delta's receipt of initial refund request.

3. Tickets charged under a universal air travel plan will be refunded to the subscriber against whose account the ticket was charged.

4. Tickets issued against governmental transportation requests shall be issued as required by applicable government regulation.

5. Tickets paid with any other form of payment will be issued back to the original form of payment.

### D. Overcharges

No claims for overcharge shall be valid and DL shall have no liability if claim is more than forty five (45) days after the date of issue of the ticket.

### RULE 23: CURRENCY; DECLINED OR DISPUTED FORMS OF PAYMENT

Except as otherwise provided, all fares and charges between points in the United States are stated in dollars and cents of the lawful currency of the United States. Except as set forth in this contract of carriage, a

passenger is liable for the entire ticket price and fees for an issued ticket, notwithstanding any dispute, chargeback or declined form of payment. Delta reserves the right to collect all such amounts at any time, including after transportation has been provided.

**RULE 24:**     **GOVERNING LAW; ENTIRE AGREEMENT; LIMITATION OF LIABILITY**

Any and all matters arising out of or relating to this Contract of Carriage and/or the subject matter hereof shall be governed by and enforced in accordance with the laws of the United States of America and, to the extent not preempted by Federal law, the laws of the State of Georgia without regard to conflict of law principles, regardless of the legal theory upon which such matter is asserted. This Contract of Carriage, including the Ticket and Fare Rules, represents the entire agreement between the parties relating to transportation by Carrier, and shall supersede all prior representations, understandings or agreements pertaining thereto, either oral or written. No other covenants, warranties, undertakings or understandings may be implied, in law or in equity.

Delta shall not be liable for any punitive, consequential or special damages arising out of or in connection with carriage or other services performed by Delta, whether or not Delta had knowledge that such damage might be incurred.  Delta shall not be liable for any damage arising out of its compliance with any laws, government regulations, orders, rules, requirements or security directives or as a result of a passenger's failure to comply with such laws, government regulations, orders, rules, requirements or security directives or as a result of Passenger's reliance on advice provided by Delta regarding such laws, regulations, orders, rules, requirements or security directives.

Election or failure by Delta to enforce any provision of the contract of carriage shall not constitute a waiver of its rights and remedies with regard to such provision or any other provision.

## IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. **CACE23010060**   DIVISION: **04**   JUDGE: **Haury, William W., Jr. (04)**

**Holly Clampet**

Plaintiff(s) / Petitioner(s)

v.

**Delta Air Lines, Inc., a foreign corporation**

Defendant(s) / Respondent(s)

_____ /

### AGREED ORDER GRANTING MOTION FOR EXTENSION OF TIME TO RESPOND TO COMPLAINT

    THIS CAUSE came on before the Court on the Defendant, Delta Air Lines, Inc.'s ("Delta") Agreed Motion For Extension of Time to Respond to

Complaint (the "Motion"). The Court having reviewed the file, being made aware of the parties' agreement on the entry of this order, and being otherwise

fully advised in the premises, it is hereby

    **ORDERED AND ADJUDGED** that

1)    The Motion is **GRANTED**.

2)    Delta shall file its response to Plaintiff's Complaint on or before Wednesday, May 3, 2023.

**DONE AND ORDERED** in Chambers at Broward County, Florida on <u>17th day of April, 2023</u>.

<u>CACE23010060 04-17-2023 10:34 PM</u>
Hon. William Haury Jr
**CIRCUIT COURT JUDGE**
Electronically Signed by William Haury Jr

**Copies Furnished To:**
Alec H. Schultz , E-mail : aschultz@hilgersgraben.com

Alec H. Schultz , E-mail : Riggins@hilgersgraben.com
Alec H. Schultz , E-mail : paralegals@hilgersgraben.com
Lazaro Fernandez Jr. , E-mail : gmartich@stackfernandez.com
Lazaro Fernandez Jr. , E-mail : lfernandez@stackfernandez.com